George Palmer Garrett, of Orlando, Fla., for appellant.

T. Paine Kelly, of Tampa, Fla., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

## VANS AGNEW v. FORT MYERS DRAINAGE DIST.

No. 7164.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1934.

Rehearing Denied March 16, 1934.

WALKER, Circuit Judge.

This action was brought by the appellant, the executrix of the last will and testament of P. A. Vans Agnew, Sr., deceased, against the appellee, Fort Myers Drainage District, the appellant's declaration alleging that appellee was indebted to appellant in the amount of $20,000 for work done and services performed by appellant's testator (hereinafter referred to by his surname) for appellee at appellee's request. Appellee pleaded the general issue, "that it was never indebted as alleged." A jury was waived, and the issues were tried by the court. The judgment was in favor of the appellant for the sum of $500 and court costs, it appearing from an opinion rendered that the judgment was a result of the court's construction of a contract which was entered into by the appellee's acceptance of a proposition stated in a letter of Vans Agnew, dated June 28, 1926, and addressed to the appellee, of which letter, omitting the address and the signature, the following is a copy:

"Referring to your letters of the·22nd. and 24th. inst., and to my telegrams to you of Saturday.

"Referring also to Mr. A. H. Gillingham's

night letter wire to me of yesterday received this morning.

"After discussing the matter with Major Gillingham, I agreed to handle the legal work of the District as consulting attorney for 2% of the Bond Issue of which fee one-third will go to your local attorneys, Messrs. Henderson, Franklin & Christie, and two-thirds to myself.

"Such legal services to include:

"1. Past services;

"2. Handling the pending Commissioners' Report and all matters pertaining to the contemplated bond issue up to the delivery of the Bonds;

"3. Future consultative and advisory services during the construction of the Plan of Reclamation and until the final completion of the drainage system.

"It is understood that this fee also includes any court proceedings or litigation that may arise prior to the delivery of the Bonds, but does not include the following:

"(a) Tax Foreclosure Suits in which the attorney's fee is fixed by the Court and attaches to the lands;

"(b) Any litigation that may arise after the delivery of the Bonds, for which a reasonable fee shall be mutually agreed upon.

"The foregoing proposition is in accordance with the usual custom and practice followed by the other drainage districts with which I have been connected.

"Also the foregoing offer excludes and has nothing to do with the customary retainer of $500.00 which is always paid by all of my districts and which in this case has never been paid and for which I shall be glad to receive a warrant at any time.

"This letter if approved by your Board will in itself constitute a Contract."

Evidence showed the following: The appellee never had any funds. No work on the drainage project for the carrying out of which it was organized was ever done. Vans Agnew, who was a competent lawyer and a specialist in Florida district drainage law, rendered services for the appellee from the time it was organized in 1919, and continued to represent it until the date of his death, September 26, 1929. On July 13, 1926, appellee issued its warrant to Vans Agnew for the amount of his retainer fee, $500. That warrant was not paid. After appellee had been authorized to issue its bonds in the amount of $1,003,000, had entered into a contract for the sale of the bonds authorized to be issued, had had bonds prepared, signed, and sealed, and had sent them to its agent to be delivered on the payment of the agreed price therefor, upon the failure of the person who agreed to buy the bonds to pay for them, the appellee, on January 2, 1929, canceled the contract for the sale of the bonds. So far as appeared, Vans Agnew never claimed that a debt of the appellee to him for any sum other than that of the stipulated retainer fee ever accrued.

■ By its express terms the contract made the percentage compensation contracted for dependent upon "the Bond issue." It is well settled by Florida decisions that, unless a different meaning is disclosed, a transaction which is referred to or described as a "bond issue" does not occur prior to the delivery of the instruments, complete in form, to one who takes them as holder or owner. City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254, 255; Osborne v. Stripling, 81 Fla. 375, 88 So. 265; Potter v. Lainhart, 44 Fla. 647, 673, 33 So. 251. The cited decisions are in harmony with decisions in other jurisdictions. 33 C. J. 826. With reference to the word "issue," as applied to improvement bonds, the Supreme Court of Florida, in the case of City of Jacksonville v. Renfroe, supra, said: "The word 'issued,' as applied to bonds, usually includes delivery, but it does not invariably do so. But, where a different meaning is to be given the word 'issue,' the intention to give it such different meaning must appear upon the face of the act or document in which it is used. The word 'issue' is used in section 6, article 9, of the Constitution, without any other language being used to indicate that any except the general meaning is to be applied to such word."

■ Nothing in the above set out letter indicated that the words "the Bond Issue" were intended to have a meaning different from the one usually expressed by those words. That the writer of the letter intended the quoted words to cover delivery of the bonds to a purchaser or purchasers is indicated by the provision as to the stipulated percentage fee including court proceedings or litigation "that may arise prior to the delivery of the Bonds."

For the appellant it was contended that it would be unreasonable to give to the language used by Vans Agnew in stating the proposition submitted the meaning ordinarily conveyed by such language, because to do so would attribute to him a willingness to make his right to any compensation for his services, other than the stated $500 retainer, the subject of a gamble on a future event which might never happen. In view of the situation

existing at the time that proposition was submitted, the suggested improbability of that proposition having been intended to have the meaning imported by the language used in stating it by no means is apparent. The appellee had been in existence since 1919. It had never had any funds. It had not started the drainage work for the construction and operation of which it was created. An issue of bonds by the appellee was then in contemplation. It well may have been believed that appellee would continue to be a dormant organization until it acquired necessary funds by the consummation of the contemplated bond issue by the payment of the price of the bonds by the purchaser or purchasers of them. It is not improbable that Vans Agnew realized that appellee's consent to become liable to pay him for his services an amount approximating that of the stipulated percentage would not be given except upon the condition that the bonds it was authorized to issue be sold and paid for. In the circumstances attending the making of the offer, the terms of it indicate that Vans Agnew realized that he would fare better if appellee succeeded in selling its bonds, and that it was advisable for him to take a chance by making the accrual of his right to the amount of the stipulated percentage, and of appellee's liability to pay that amount, contingent upon the consummation of the contemplated bond issue.

■ Even if it properly may be considered that the language used justifies a doubt as to Vans Agnew intending to make his right to compensation for his services, other than the stated retainer, dependent upon the bonds referred to being sold and paid for, as he chose that language, a doubt as to its meaning is to be resolved against him. Bijur Motor Lighting Co. v. Eclipse Mach. Co. (D. C.) 237 F. 89; 6 R. C. L. 854. Vans Agnew being a capable and experienced lawyer, it well may be concluded that different language would have been used if he had intended to get the appellee to agree to a large sum as the reasonable value of his services, though the appellee may never sell any bonds, or that his right to receive the amount of the stipulated percentage would accrue upon the happening of an event other than the issue of bonds of the appellee, as upon such bonds being made ready for delivery to a purchaser or purchasers, or upon the completion of the legal services incident to appellee becoming ready to comply with its obligations under a contract for a sale of the bonds. Resort to the rule as to construing a contract against the party who chose the language of it hardly is needed to justify the conclusion that, under the contract in question, Vans Agnew, prior to a delivery to a purchaser or purchasers of the bonds referred to, was not entitled to compensation for his services rendered to appellee, other than the $500 retainer.

■ In construing a contract what a party to it did or omitted to do after the contract was made properly may be considered. 6 R. C. L. 852. Though Vans Agnew lived more than three years after the contract was entered into, and nearly a year after the cancellation of the contract for the sale of the bonds referred to, he made no claim that appellee owed him any amount other than $500 retainer. His conduct adds support to the conclusion that the contract was intended to have the meaning imported by its language. Manifestly that contract was intended to cover compensation for all services rendered by Vans Agnew to or for the appellee, with a result that appellee was not liable to Vans Agnew or the appellant, except as provided in the contract. It follows that reversible error is not shown by the record.

The judgment is affirmed.