Leonel LOPEZ, Sr., Zulema M. Lopez, and Leonel Lopez, Jr., individually and on behalf of the Estate of Eloy Lopez, deceased, Petitioners,

v.

MUÑOZ, HOCKEMA & REED, L.L.P. and Albert A. Muñoz, II, David A. Hockema and Roger H. Reed, individually and d/b/a Muñoz, Hockema & Reed, Respondents.

No. 98–0994.

Supreme Court of Texas.

Argued Oct. 20, 1999.

Decided June 8, 2000.

Rehearing Overruled Aug. 24, 2000.

11. *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.1987).

Timothy Patton, Dan Pozza, San Antonio, for Petitioner.

Kevin H. Dubose, David M. Gunn, Hogan Dubose & Townsend, Houston, Rose R. Vela, Barger & Moss, Darrell L. Barger, Barger Hermansen McKibben & Villarreal, Corpus Christi, Billy Shepherd, Cruse Scott Henderson & Allen, Houston, for Respondent.

Justice O'NEILL delivered the opinion of the Court, joined by Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER, Justice ABBOTT, and Justice HANKINSON, and by Chief Justice PHILLIPS and Justice GONZALES as to Parts I and IV.

The contingent fee contract that underlies this dispute allowed the plaintiffs' law firm to charge an additional five percent fee in the event the case was "appealed to a higher court." We must decide whether the law firm breached the contract by charging its client the additional fee when the defendant, to preserve its right to appeal, filed a cash deposit in lieu of a cost bond with the trial court shortly before settlement documents were signed. We hold that the case was "appealed to a higher court" when the defendant initiated the appellate process by filing a cash deposit in lieu of a cost bond; therefore, the law firm did not breach the contract by charging the additional fee. This holding also disposes of the clients' breach of fiduciary duty claim because that claim is based entirely upon the alleged contract breach. However, because the trial court's judgment improperly disposed of the clients' fraud, negligence, and DTPA claims, we remand them to the trial court for further proceedings.

## I

## Background

The Muñoz, Hockema & Reed (MHR) law firm represented the Lopez family in a wrongful-death suit against Westinghouse Electric Corporation. Their contingent fee contract assigned forty percent of any recovery to MHR, and forty-five percent if the case "is appealed to a higher court."[1] After the jury returned a verdict against Westinghouse in excess of twenty-five million dollars, the parties began settlement negotiations. While the negotiations were ongoing, the trial court rendered judgment on the verdict, and the deadline for perfecting an appeal was October 29, 1991.

By mid-October, Westinghouse had tentatively agreed to a settlement.[2] To preserve its right to appeal should the settlement fall through, Westinghouse, on October 18, 1991, filed a cash deposit in lieu of a cost bond with the trial court. MHR and the Lopezes met on October 21 to discuss the settlement and MHR's fees. The Lopezes' estate and tax attorneys, their family attorney and an accountant attended this meeting. MHR explained to the Lopezes that its fee would be forty-five percent of the recovery, or $6,750,000, and no one voiced an

---

1. The relevant portion of the Lopezes' contract with MHR reads as follows:

    For services rendered, and to be rendered, I/we assign 40% of any monies or other property recovered. If the case is appealed to a higher court then 45% of any monies or other property recovered is herein assigned. If nothing is recovered, I/we owe said attorneys nothing.

2. Although the court of appeals wrote that Westinghouse's attorney "agreed to [settle]," 980 S.W.2d 738, 740, there was conflicting testimony as to whether the attorney accepted the settlement or merely reported that he would take it to his client for approval.

objection. The settlement was ultimately signed on October 30, 1991. Among other documents, the Lopez family members signed a settlement statement reflecting MHR's forty-five percent fee percentage. The funds were distributed according to the settlement statement, and Westinghouse took no further action on its appeal.

About three years later, MHR received a letter requesting that the firm refund the additional five percent fee to the Lopez family. When MHR refused, the Lopezes sued, alleging breach of contract, breach of fiduciary duty, fraud, negligence, and DTPA violations. The Lopezes sought forfeiture of the entire fee. The Lopezes moved for summary judgment on the breach of fiduciary duty and contract claims and moved to sever the other claims. MHR filed a cross-motion for summary judgment alleging that the doctrines of accord and satisfaction and "acceptance of benefits" defeated the Lopezes' claims and that limitations barred their breach of fiduciary duty claim. MHR also claimed that the summary judgment evidence showed no contract breach as a matter of law.

The trial court denied the Lopezes' summary judgment and severance motions, and granted MHR's motion for summary judgment except as to limitations. The court of appeals reversed. *See* 980 S.W.2d 738, 744. The appeals court held that MHR breached the fee agreement by charging the forty-five percent appeal rate, and that the contract breach was also a breach of fiduciary duty. *See id.* at 742–43. The court reasoned that "appealed to a higher court" means something more than initiating the appellate process by filing a cash deposit in lieu of a cost bond. *See id* at 742. The appeals court further held that MHR's affirmative defenses did not defeat the Lopezes' recovery, and reversed and rendered a $750,000 judgment for the Lopezes, representing five percent of the settlement. *See id.* at 742. The court of appeals remanded the case to the trial court for consideration of the Lopezes' claim for attorneys' fees. One justice, concurring and dissenting, agreed with the majority that MHR had breached its fiduciary duty but concluded that the appropriate remedy was forfeiture of MHR's entire fee. *See id.* at 744–45 (Duncan, J., concurring and dissenting).

The Lopezes petitioned this Court for review, arguing that the court of appeals should have ordered MHR to remit the entire fee and not just the five percent overcharge. MHR cross-petitioned arguing that, as a matter of law, it did not breach its contract with, or fiduciary duty to, the Lopezes.

## II

### Breach of Contract

■ We first consider the breach of contract claim. The Lopezes argue that the phrase "appealed to a higher court" is ambiguous and should be construed against its drafter, MHR. *See Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990). They also argue that, because of the fiduciary nature of the relationship, any contract between an attorney and a client must be construed in a reasonable and equitable manner. *Cf. Keck, Mahin & Cate v. Insurance Co. of N. Am.*, 20 S.W.3d 692 (Tex.2000); *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964). The Lopezes contend that the contract provision at issue is subject to only one reasonable and ethical meaning, although their expression of that meaning is less than clear. While these general rules of construction apply when we construe ambiguous contracts or contracts that are reasonably susceptible to more than one interpretation, we hold that the contract language at issue is unambiguous and that MHR did not breach the contract. *See Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996) (stating that an unambiguous contract will be enforced as written).

■ Whether a contract is ambiguous is a question of law for the court to decide. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). In construing contracts, we must ascertain and give effect to the parties' intentions as expressed in the document. *See id.* A contract is not ambiguous if it can be given a certain or definite legal meaning or interpretation. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996). Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *See Columbia Gas,* 940 S.W.2d at 589; *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). Because here the contract language can be given a definite legal meaning, and it is not reasonably susceptible to more than one meaning, it is unambiguous.

■ By filing a cash deposit in lieu of a cost bond, Westinghouse "perfected" an appeal under the appellate procedure rules in effect when the underlying case settled. Tex.R.App. P. 40(a)(1), 707 S.W.2d (Tex. Cases) LI (Tex.1986, amended 1997).[3] The appellate rule further provided that, absent a supersedeas bond, a cash deposit does not suspend the judgment and execution may issue "as if no appeal ... had been taken." Tex.R.App. P. 40(a)(5), 707 S.W.2d (Tex.Cases) LII (Tex.1986, amended 1997). Thus, the rule's plain language indicates an appeal was "taken" and the appellate court's jurisdiction was invoked when Westinghouse made its cash deposit. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 909 S.W.2d 505, 506 (Tex. 1995)(per curiam); *Ammex Warehouse Co. v. Archer,* 381 S.W.2d 478, 482 (Tex.1964).

The Lopezes contend, and the court of appeals agreed, that "appealed to a higher court" means something more than initiating the appellate process. *See* 980 S.W.2d at 742. Although not stating what that "something more" might be, the court of appeals held that "appealed to a higher court" anticipates "a meaningful review of the appellate record and a careful consideration of the arguments presented in the appeal." 980 S.W.2d at 742. The problem with this approach, however, is that it expands the actual contract language and makes it difficult, if not impossible, to determine with any certainty when a case has been "appealed."

The appellate process involves many steps, such as transmitting the trial court record, preparing and responding to the briefs, and presenting oral argument. *See* Tex.R.App. P. 54(a), 74, 75, 707 S.W.2d (Tex.Cases) XVIII, LXXIV–LXXVIII (Tex.1986, amended 1997). The rules require the court of appeals to write an opinion addressing all issues raised and necessary to the appeal's disposition. *See* Tex.R.App. P. 90(a), 707 S.W.2d (Tex. Cases) LXXXV (Tex.1986, amended 1997). After the opinion issues, the parties may file motions for rehearing, which the court must then consider and decide. *See* Tex. R.App. P. 100, 707 S.W.2d (Tex.Cases) LXXXVI–LXXXVII (Tex.1986, amended 1997). At what point "meaningful review" occurs during this ongoing process is not readily discernible. We believe the Lopezes' interpretation of the contract language is too broad and therefore unworkable. That an appeal may encompass multiple and various stages does not mean that the contract language is ambiguous. Under our former appellate rules, an appeal was "taken" and the court of appeals' jurisdiction invoked when a cash deposit in lieu of a cost bond was filed. Thus, when Westinghouse made its cash deposit, the case was "appealed to a higher court" under the contract's terms.

**3.** Rule 25.1(a) of the Texas Rules of Appellate Procedure now provides that "[a]n appeal is perfected when a written notice of appeal is filed with the trial court clerk." Tex.R.App. P. 25.1(a).

When a contract is unambiguous we will enforce it as written. *See Heritage Resources*, 939 S.W.2d at 121. We hold that the case was "appealed to a higher court" when Westinghouse perfected its appeal. Accordingly, as a matter of law MHR did not breach the contract by charging the additional appeals fee. Therefore, the trial court did not err in granting MHR summary judgment on the Lopezes' breach of contract claim.

## III

### Breach of Fiduciary Duty

The Lopezes' breach of fiduciary duty claim, as presented in their pleadings and summary judgment motion, was grounded solely on the theory that MHR breached its contract. As the court of appeals noted, "the Lopez family tied its breach of fiduciary duty claim to its breach of contract claim." 980 S.W.2d at 740. In their summary judgment motion, the Lopezes summarized the facts and argued that MHR's behavior breached the contract. Their argument that MHR breached its fiduciary duty followed immediately: "Further, such conduct constitutes, as a matter of law, a breach of the Defendant's fiduciary obligation to the Plaintiffs." Nowhere in their pleadings, their motion for summary judgment, or their response to MHR's motion for summary judgment did the Lopezes argue that MHR breached its fiduciary duty other than by breaching its contract. Although counsel later posited that MHR had a duty to inform the Lopezes that there was an alternate colorable construction of the triggering clause, the Lopezes neither pleaded nor briefed this theory.

Texans for Reasonable Legal Fees (TRLF) has filed an amicus brief arguing that MHR's fee is unreasonable despite the fee agreement and that MHR breached its fiduciary duty by charging an excessive fee. Alternatively, TRLF contends MHR breached its fiduciary duty by failing to inform the Lopezes that the phrase "if the case is appealed to a higher court" might colorably be interpreted to mean something other than "if appeal is perfected." Whether or not these theories have merit, they are not before us.

The Lopezes submitted no theory other than breach of contract to support their breach of fiduciary duty claim. They did not allege that the forty-five percent appeal rate was excessive when the contract was made, or that charging the additional five percent was a breach of fiduciary duty irrespective of the contract's terms.[4] Nor did they allege that MHR concealed the additional fee charge, improperly delayed execution of the settlement so that Westinghouse would perfect an appeal, or otherwise manipulated the settlement and appeal process in order to charge the higher fee.

On an appeal from summary judgment, we cannot consider issues that the movant did not present to the trial court. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996); *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). We have already decided that the trial court did not err in granting MHR's motion for summary judgment on the breach of contract claim. Because the Lopezes premised their breach of fiduciary duty claim on MHR's alleged contract breach, our conclusion on the contract issue necessarily disposes of the breach of fiduciary duty claim.[5]

---

4. According to the court of appeals, the evidence showed that the parties understood the case would not be appealed if it settled, and MHR breached its fiduciary duty because it knew the case would not be appealed when it charged the additional five percent. *See* 980 S.W.2d at 743. But this conclusion is based upon the court of appeals' expanded definition of an appeal, which we have rejected in the context of this case.

5. We note that the court of appeals also concluded that the Lopezes' breach of fiduciary duty claim was predicated on their contract claim. *See* 980 S.W.2d at 740.

## IV

### Other Claims/Affirmative Defenses

The Lopezes also pleaded negligence, DTPA violations, and fraud. The Lopezes did not move for summary judgment on these claims but rather moved to sever them. The motion to sever was combined with their motion for summary judgment on the breach of contract and breach of fiduciary duty claims. In response, MHR filed a cross-motion for summary judgment arguing that (1) the parties had reached an accord and satisfaction, (2) the Lopezes accepted the benefits of the settlement and were therefore estopped from contesting it, (3) the breach of fiduciary duty claim was barred by limitations, and (4) there was no breach of contract as a matter of law. The trial court denied the Lopezes' severance and summary judgment motions, and rendered summary judgment for MHR on all of the Lopezes' claims without specifying the grounds for its ruling. We have upheld the trial court's summary judgment in MHR's favor on the Lopezes' breach of contract and breach of fiduciary duty claims. We must next decide whether the trial court properly granted summary judgment in MHR's favor on the Lopezes' remaining fraud, negligence, and DTPA claims.

The affirmative defenses asserted by MHR that could arguably defeat the Lopezes' remaining claims are accord and satisfaction and acceptance of the benefits. MHR contends that the trial court properly granted summary judgment on these defenses, and therefore all of the Lopezes' remaining claims are barred. The Lopezes, on the other hand, contend that MHR was not entitled to summary judgment on these affirmative defenses. We agree with the Lopezes, and consequently remand their fraud, negligence, and DTPA claims to the trial court.[6]

The accord and satisfaction defense rests upon a contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted. *See Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969). MHR claims that the Lopez family's agreement to accept the settlement after full disclosure of the forty-five percent additional fee constituted an accord, which was satisfied when the Lopezes accepted payment of their part of the settlement funds. However, for this defense to prevail, there must be a dispute and an unmistakable communication to the creditor that tender of the reduced sum is upon the condition that acceptance will satisfy the underlying obligation. *See id.* The parties must specifically and intentionally agree to the discharge of one of the parties' existing obligations. *See Industrial Life Ins. Co. v. Finley*, 382 S.W.2d 100, 104 (Tex.1964). In other words, to prevail on its defense, MHR was required to present summary judgment evidence that the Lopezes disputed the fee and specifically and intentionally agreed to relinquish any claims they might have had against MHR for its alleged overcharge. To knowingly relinquish claims arising out of MHR's alleged overcharge the Lopezes would have to know that an overcharge existed. There is no evidence in the record, however, that there was a fee dispute between the Lopezes and MHR when the Lopezes accepted the settlement. "A valid accord and satisfaction requires that there initially be a legitimate dispute between the parties about what was expected." *Bueckner v. Hamel*, 886 S.W.2d 368, 372 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Accordingly, MHR was not entitled to summary judgment on its accord and satisfaction defense.

---

6. MHR claims that the Lopezes did not properly plead fraud or negligence, but concedes that the Lopezes pleaded DTPA violations. Nonetheless, both parties agree that whatever claims remain were disposed of improperly and should be remanded unless MHR established that it was entitled to summary judgment on its affirmative defenses.

MHR's remaining defense, acceptance of the benefits, is a species of quasi-estoppel. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex.App.—Corpus Christi 1994, writ denied). Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *See id.* The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *See id; Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765–66 (Tex.App.—Texarkana 1992, writ denied). For the reasons considered in connection with the accord and satisfaction defense, the Lopezes' initial acceptance of a lesser portion of the settlement is not inconsistent with their later assertion that they were entitled to more. Consequently, MHR was not entitled to summary judgment based upon its acceptance of the benefits defense.

## V

We reverse the court of appeals' judgment on the Lopezes' breach of contract and breach of fiduciary duty claims, render judgment that the Lopezes take nothing on those claims, and remand the Lopezes' fraud, negligence, and DTPA claims to the trial court.

Justice GONZALES filed an opinion concurring in part and dissenting in part, in which Chief Justice PHILLIPS joined.

Justice GONZALES, joined by Chief Justice PHILLIPS, concurring and dissenting.

I join Part IV of the Court's opinion, that the Lopez family's fraud, negligence, and DTPA claims should be remanded. I agree with the Court's conclusion but not its reasoning in Part III that the Muñoz firm did not breach the fiduciary duty alleged by the Lopez family. However, I dissent from Part II of the Court's opinion because, unlike the Court, I conclude that the contract is ambiguous and would re-

mand for that reason. Accordingly, I only join the Court's judgment in part. I write further to advance the proposition that attorneys owe a fiduciary duty to fully explain the ramifications of their employment contracts to their clients.

Here we must decide whether a contingent fee contract between a law firm, Muñoz, Hockema & Reed, and its client, the Lopez family, entitles the firm to forty percent or forty-five percent of the Lopezes' settlement recovery of fifteen million dollars from Westinghouse Electric Corporation. The settlement was finalized a few days after Westinghouse filed a cash deposit in lieu of cost bond to preserve its right to appeal. *See* TEX.R.APP. P. 40(a)(1), 707 S.W.2d (Tex.Cases) LI (Tex.1986, amended 1997). The lawyers' portion of the fifteen million dollars depends on the contract language that provides a forty percent contingent fee for services rendered, but forty-five percent if the case is "appealed to a higher court." The Court decides that the term "appealed to a higher court" plainly and unambiguously means the moment that one party files a cash deposit in lieu of a cost bond with the court, thereby preserving its right to an appeal. I respectfully disagree.

As the Court acknowledges, our standard rules of contract construction direct us to ascertain the true intentions of the parties as expressed in the terms of the instrument. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We give contract terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *See Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). Neither the parties nor the Court contends that "appealed to a higher court" is a technical term or a term of art. The Court, however, ignores the tenets of contract construction by adopting a technical and specialized meaning of the term "appealed to a higher court." While the public would generally understand that some act must

be taken to initiate the appellate process, it defies common sense to conclude that the general public would understand the term to mean the point in time a party files a cash deposit in lieu of a cost bond. The Court's own words confirm the ambiguity about this term. The Court concludes that the filing of a cash deposit in lieu of a cost bond *results* in an appeal, and yet states that filing a cash deposit in lieu of a cost bond *preserves* a right to appeal—suggesting that an appeal has yet to occur. 22 S.W.3d 857, 861. Generally, only members of the legal profession have any reason to know and appreciate that filing a cash deposit in lieu of a cost bond preserved a right to appeal under the old rules. Such a limited and specialized meaning cannot be the plain and common meaning of the term for purposes of this contract.

The Court says that it chooses the filing of a cash deposit in lieu of cost bond as the point in time a case is "appealed" because that event provides certainty. 22 S.W.3d at 861. The Court dismisses the court of appeals' decision that "appealed to a higher court" means something more than initiating the appellate process, because, the Court explains, such a construction expands the actual contract language and "makes it difficult, if not impossible, to determine with any certainty when a case has been appealed." 22 S.W.3d at 861. But the Court has no obligation to reach an interpretation that achieves certainty if a construction is inconsistent with the intent of the parties as reflected in the words of the contract. Instead, the Court must construe the contract as written, not as it would have drafted the contract had it been a party. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

Even if providing certainty were the goal in construing this contract, the Court does not explain why perfection of an appeal is any more certain than other stages of the appellate process. The Court concedes that the appellate process involves many steps, and I find nothing in the contract that specifies that the law firm is entitled to the additional fee for services rendered if the right to appeal is *preserved*—which is all that really happened here. The contract merely provides for the additional fee if the case is "appealed." Thus, it is the Court that expands the contract language by choosing the preparatory stage of the appellate process. And as for the certainty in contract desired by the Court, that can surely be achieved by choosing other equally determinable events in the appellate process.

When considering the plain meaning of the term "appealed to a higher court," I believe there are multiple reasonable interpretations. First, this term reasonably could mean the first procedural or technical step taken to preserve the right to appeal—the interpretation adopted by the Court. Second, the term "appealed to a higher court" could mean when a party expresses his or her complaint to an appellate court and seeks redress. Under this view, the term "appealed" would correspond with the filing of the appellant's brief in the court of appeals or the filing of a petition for review in this Court. Third, one could conclude that the term "appealed" contemplates a completed act. In that case, "appealed" could mean when the parties have fully expressed their arguments and have submitted the case to an appellate court for a decision. Each of these constructions is consistent with the plain language of the contract, and each would provide the certainty important to the Court. Because I conclude there are multiple reasonable meanings of the term "appealed to a higher court," I would hold that this contract is ambiguous. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983) (explaining a contract is ambiguous when its meaning is reasonably susceptible to more than one meaning).

Generally, when the objective meaning of a contract term is ambiguous, the parties' subjective meaning of the term becomes a fact question. *See Columbia Gas Transmission Corp. v. New Ulm Gas,*

*Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). In some circumstances, however, courts will construe the contract to favor one party in light of the relationship of the parties or public policy. *See Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984) ("a writing is generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties."). For example, when an insurance contract is ambiguous, the contract is construed against the insurer. *See State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.1998). One court construed an equipment lease against the drafter because that party was responsible for choosing the ambiguous language and could have used clearer terms. *See General Corrosion Services Corp. v. K Way Equip. Co., Inc.*, 631 S.W.2d 578, 580 (Tex. App.—Tyler 1982, no writ). However, this Court has not applied the rule of construction to an employment contract between an attorney and client.[1]

The special relationship between a lawyer and client leads me to conclude that an ambiguous contract between them should generally be construed against the lawyer-drafter. The Restatement of Contracts suggests that construing contracts against the drafter is justified when the drafter is in a better position to know of uncertainties of meaning or when the drafting party has the stronger bargaining position. *See Restatement (Second) of Contracts § 206 com. a (1981).* The Restatement of the Law Governing Lawyers, which adopts a similar construction rule for lawyer-client contracts, adds the rationale that lawyers are more able than most clients to detect and repair omissions in lawyer-client agreements. *See Restatement (Third) of Law Governing Lawyers § 29A com. h*

(Proposed Final Draft No. 1, 1996). These reasons suggest that ambiguities in fee contracts should be construed against the lawyer-drafter. Usually a lawyer is in a better position to understand the terms of a contract drafted by the lawyer than a client. Clients, after all, are clients because they need legal advice and seek to hire lawyers with greater legal skill and experience. Additionally, a lawyer is usually in a stronger bargaining position and generally has more experience negotiating contracts, settlements, and fee arrangements. Finally, lawyers, because of their training and experience, are in a better position than most of their clients to discover and correct ambiguities in the contract.

For these reasons, I would generally construe ambiguous lawyer-client contracts against the lawyer-drafter. But even if the Court is unwilling to adopt such a rule of construction, it should at least remand because the objective meaning of the contract term "appealed to a higher court" is ambiguous.

The Lopez family also alleges that the Muñoz law firm breached its fiduciary duty by breaching their contract. In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. *See Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964). The duty is highest when the attorney contracts with his or her client or otherwise takes a position adverse to his or her client's interests. As Justice Cardozo observed, "[a fiduciary] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458,

---

1. Many other courts, however, have adopted as a rule of construction that lawyer-client contracts will be strictly construed against the lawyer. *See, e.g., Vans Agnew v. Fort Myers Drainage Dist.*, 69 F.2d 244, 246 (5th Cir. 1934); *Waugh v. Q. & C. Co.*, 16 F.2d 363, 365 (7th Cir.1926); *Estate of Sparkman v. Smith*, 639 So.2d 1258, 1261 (Miss.1994);

*Cardenas v. Ramsey County*, 322 N.W.2d 191, 193–94 (Minn.1982); *Hitchcock v. Skelly Oil Co.*, 201 Kan. 260, 440 P.2d 552, 554 (1968); *In re Irwin*, 162 Or. 221, 91 P.2d 518, 523 (1939); *Bennett v. Potter*, 180 Cal. 736, 183 P. 156, 157–58 (1919); *Falloon v. Miles*, 102 Neb. 843, 170 N.W. 191, 192 (1918).

164 N.E. 545, 546 (1928). Accordingly, a lawyer must conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind.

Clearly, a breach of fiduciary duty may arise if a lawyer accepts fees that the lawyer is not entitled to by contract. But not every breach of contract is necessarily a breach of fiduciary duty. If a lawyer acts in good faith under a colorable interpretation of a contract, the lawyer does not necessarily act against a client's interest. *See* Restatement (Third) of Law Governing Lawyers § 28 (Proposed Final Draft No. 1, 1996) (limiting professional discipline to *intentional* failures to fulfill a valid contract). Here, the Muñoz law firm accepted the additional fee under one of several reasonable interpretations of the contract, and the Lopez family does not allege that the firm was acting in bad faith. Accordingly, even if the fact finder were to conclude that the term "appealed to a higher court" refers to a point in time after the right to appeal is preserved, I would hold that the Muñoz firm did not breach its fiduciary duty to the Lopez family by breaching its contract.

But there are two other ethical issues in this case, about which the Lopez family does not complain, that nonetheless deserve discussion. The first relates to a lawyers's duty to fully and honestly inform his or her client of a fee arrangement. See TEX. DISCIPLINARY R. PROF. CONDUCT 1.03(b), 1.04(d) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (1998). The fiduciary relationship between attorney and client requires "absolute and perfect candor, openness and honesty, and the absence of any concealment or deception." *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex.App.—Corpus Christi 1991, writ denied); *see also Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). Fundamentally, a lawyer should always act in the client's best interests. A lawyer and client's negotiations are often imbalanced in favor of the lawyer because of information inequalities and the client's customary reliance on the lawyer's legal advice. Consequently, a lawyer should fully explain to the client the meaning and impact of any contract between them. Here, for example, to best serve their client, and to protect their own interests, the Muñoz firm could have explained to the Lopez family at the time the contract was signed that the firm believed it would be entitled to an additional fee the moment Westinghouse preserved their right to appeal, even though an agreement in principle had been reached to settle the case.

Another ethical consideration that deserves mention is the lawyer's fiduciary duty not to collect an unconscionable fee from his client. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(a); *Nolan v. Foreman*, 665 F.2d 738, 741 (5th Cir.1982) (holding under Texas law an attorney breaches a fiduciary duty to the client by charging an excessive fee). A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(a). The reasonableness of any fee depends on the circumstances of the services. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b) (detailing factors to weigh in determining reasonableness of fees); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, §§ 46, 47 (Proposed Final Draft No. 1, 1996). Generally, however, a lawyer's fee is unreasonable if it is grossly disproportionate to the work and the risks. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b); *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107, 113 (1986); *The Florida Bar v. Moriber*, 314 So.2d 145, 149 (Fla.1975); *see also General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 960 (Tex.1996) (discussing lodestar method to calculate lawyer's fees in class actions as calculated by multiplying the number of hours expended by an appropriate hourly rate determined by a variety of factors, such as the benefits obtained for the class, the complexity of the issues involved, the expertise of counsel, the preclusion of other legal work due to acceptance of the

class action suit, and the hourly rate customarily charged in the region for similar legal work).

The fee contract here compensated the lawyers for "services rendered." There is evidence in the record that the firm did *some* work in connection with an appeal both before and after the cash deposit in lieu of cost bond was filed. But the record also suggests that the Lopez family and Westinghouse had agreed in principle to a settlement, substantially lowering the risk to the law firm—a risk existing in all contingent fee contracts—that it might not collect its fees. While a contract may entitle a lawyer to a substantial fee for little or no work, a lawyer may nonetheless be required by his or her fiduciary duty to decline the fee. Additionally, a law firm may breach its fiduciary duty if it provides little or no services, but still collects a substantial part of its clients recovery in the face of a pending settlement.

By all appearances, the law firm did a good job representing its client against Westinghouse. The firm obtained a twenty-five million dollar jury award and participated in negotiating a fifteen million dollar settlement. The lawyers should be fully compensated for their work and the risks they assumed. I do not begrudge them for demanding compensation for services rendered according to their contract.[2] But the demand must be clearly supported by the contract. And when construing contracts between lawyers and clients, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship. Lawyers should be just as mindful of these ethical obligations as their contractual obligations.

For these reasons, I concur in part and dissent in part.

2. I note that the law firm has indicated its willingness to repay the additional five percent by not appealing the court of appeals' judgment.