# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-1026

════════════

ROYSTON, RAYZOR, VICKERY, & WILLIAMS, LLP, PETITIONER,

v.

FRANCISCO "FRANK" LOPEZ, RESPONDENT

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

══════════════════════════════════════════

*-consolidated with-*

════════════

No. 14-0109

════════════

IN RE ROYSTON, RAYZOR, VICKERY, & WILLIAMS, LLP, RELATOR

══════════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

══════════════════════════════════════════

JUSTICE GUZMAN, joined by JUSTICE LEHRMANN and JUSTICE DEVINE, concurring.

We have long observed that attorneys have an ethical obligation to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[1] Today the Court decides whether the failure to timely and adequately explain the consequences of a mandatory arbitration provision in a legal services contract renders the arbitration

---

[1] TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.03(b), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, App. A (Tex. State Bar R. art. X, § 9).

agreement unenforceable. I agree with the Court that it does not and therefore fully join the Court's opinion. Moreover, I agree that Mr. Lopez failed to establish a defense to arbitration. I write separately, however, to emphasize the need for rules more specifically delineating the means and methods by which attorneys can discharge their ethical responsibilities in this context.

As written, the Disciplinary Rules do not speak directly to arbitration agreements; however, attorneys are under a general obligation to provide enough information about a matter so that the client can make informed decisions regarding the representation.[2] But this begs the questions: how much, to whom, in what form, does it depend on the relative sophistication of the parties, and if so, to what extent? The Court touches on best practices in this regard but, wisely, does not attempt to rewrite the rules governing lawyers' ethical obligations through judicial decree. Such reforms are more aptly suited to our rulemaking process, which invites the input of the bench and bar. This process will ensure we more thoroughly vet the applicable standards and will ultimately yield more predictability, uniformity, and certainty.

As a court, we are constitutionally and statutorily charged with promoting and enforcing ethical behavior by attorneys.[3] This is a solemn duty the Court has guarded for decades. As we have consistently recognized, the fiduciary nature of the attorney-client relationship imposes heightened

---

[2] *Id.*; *cf. id.* R. 1.08(a) (prohibiting lawyer from entering into a business transaction with a client unless (1) the transaction and terms "are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client"; (2) the client has a reasonable opportunity to seek independent counsel; and (3) the client consents in writing).

[3] *See* TEX. CONST. art. V, § 31; TEX. GOV'T CODE §§ 81.024, .071-.072; *see also* TEX. RULES DISCIPLINARY P. preamble, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, App. A-1 ("The Supreme Court of Texas has the constitutional and statutory responsibility within the State for the lawyer discipline and disability system, and has inherent power to maintain appropriate standards of professional conduct . . . .").

duties and obligations on attorneys:

> "In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. The duty is highest when the attorney contracts with his or her client or otherwise takes a position adverse to his or her client's interests. As Justice Cardozo observed, '[a fiduciary] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'"[4]

Attorneys must therefore demean themselves "'with inveterate honesty and loyalty, always keeping the client's best interest in mind.'"[5]

Arbitration agreements between attorneys and their clients are not inherently unethical.[6] Indeed, public policy strongly favors arbitration, and the benefits of arbitration are well recognized.[7] However, the use of arbitration agreements in legal services contracts raises special concerns, which may vary in nature or degree depending on the client's sophistication.

Vulnerable or unsophisticated clients are less likely to fully appreciate the implications of an arbitration agreement, understand the arbitration process and its procedures, or seek independent

---

[4] *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560-61 (Tex. 2006) (quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 866-67 (Tex. 2000) (Gonzales, J., concurring and dissenting)) (alteration in original).

[5] *Id.* at 561.

[6] *See* TEX. COMM. ON PROF'L ETHICS, Op. 586, 72 Tex. B.J. 128 (2008) (binding arbitration provision is permissible in engagement agreement if the terms would not be unfair to a typical client, the client is aware of the significant advantages and disadvantages of arbitration, and the arbitration provision does not limit liability for malpractice); ABA COMM. ON ETHICS & PROF'L RESPONSIBILITY, Formal Op. 02-425 (2002) (holding similarly); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 54 cmt. b (acknowledging that arbitration agreements between lawyers and clients are permissible if "the client receives proper notice of the scope and effect of the agreement" and such agreements are enforceable in the relevant jurisdiction).

[7] *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (noting that arbitration agreements have been sanctioned in Texas since 1845); *see also* Steven Quiring, *Attorney-Client Arbitration: A Search for Appropriate Guidelines for Pre-Dispute Agreements*, 80 TEX. L. REV. 1213, 1217 (2002) (discussing advantages and disadvantages of arbitration).

counsel regarding the costs and benefits of arbitration.[8]  Certainly, an attorney has an ethical responsibility to fully and fairly discuss an arbitration agreement with a client, but the Disciplinary Rules lack clear guidance for discharging that responsibility.  The potential for abuse at the earliest stages of the attorney-client relationship is a genuine concern.[9]  Guidance is essential, but rather than articulating best-practices standards by judicial fiat, the rulemaking process provides a better forum for achieving clarity and precision.

With these additional thoughts, I join the Court's opinion.

_____
Eva M. Guzman
Justice

**Opinion delivered:** June 26, 2015

---

[8] *See Lopez*, 22 S.W.3d at 867 (Gonzales, J., concurring and dissenting) ("A lawyer and client's negotiations are often imbalanced in favor of the lawyer because of information inequalities and the client's customary reliance on the lawyer's legal advice."); Jean Fleming Powers, *Ethical Implications of Attorneys Requiring Clients to Submit Malpractice Claims to ADR*, 38 S. TEX. L. REV. 625, 648 (1997).

[9] *See, e.g.*, *In re Pham*, 314 S.W.3d 520, 528-29 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (Seymore, J., dissenting); *Henry v. Gonzalez*, 18 S.W.3d 684, 692-93 (Tex. App.—San Antonio 2000, pet. dism'd) (Hardberger, C.J., dissenting); *cf. Lopez*, 22 S.W.3d at 867 (Gonzales, J., concurring and dissenting) ("[A] lawyer should fully explain to the client the meaning and impact of any contract between them.").