

# NUMBER 13-16-00581-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

COMMUNICATION
ENHANCEMENT, LLC,                                                    Appellant,

v.

IRBY NORRELL, ELAINE
NORRELL AND T14 UNISON
SITE MANAGEMENT, LLC,                                              Appellees.

## On appeal from the 197th District Court
## of Willacy County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Longoria and Hinojosa**
**Memorandum Opinion by Chief Justice Valdez**

Appellant Communication Enhancement, LLC (CE) appeals the trial court's summary judgment dismissing its claims against appellees Irby Norrell, Elaine Norrell (collectively the Norrells), and T14 Unison Site Management, LLC (Unison). By eight

issues, CE contends that (1) the Norrells violated its lease agreement with CE by entering a separate contract with Unison (first issue); (2) Unison voluntarily ceased using an easement (second issue); (3) CE is entitled to its costs and attorney's fees (third issue); (4) Unison tortiously interfered with the lease (fourth and sixth issues); (5) the trial court should have added certain parties and should have compelled production of certain documents (fifth issue); (6) the new owners of the property are not necessary parties (seventh issue); and (7) the Norrells are not absolved of responsibility (eighth issue). We affirm.

## I.    BACKGROUND

In 2002, the Norrells leased a portion of their property to CE along with easements for ingress, egress, and utilities (the easements).[1]  The Lease provided that:

> The premises may be used by [CE] for the transmission and receipt of wireless communication signals in any and all frequencies and the construction and maintenance of towers, antennas, or buildings, and related facilities and activities ("Intended Use"). . . .  [CE] may construct additional improvements, demolish and reconstruct improvements, or restore, replace and reconfigure improvements at any time during the Initial Term or any Renewal Term of this Lease.

The Lease also stated, "Lessor will not, during the term of this Lease together with any extension thereof, enter into any other lease, license or other agreement for a similar purpose as set forth herein, on or adjacent to the Property [(the Restrictive Covenant)]."

Subsequently, in 2014, the Norrells assigned their rights to the rents from CE under the Lease to Unison (the Agreement).  Section 1 of the Agreement also granted Unison "an exclusive easement in, to, under and over" the property "for the transmission and reception of any and all wireless communication signals and the construction,

---

[1] We will refer to this document as "the Lease."

2

maintenance, repair, replacement, improvement, operation and removal of towers, antennas, buildings, fences, gates, generators and related facilities." However, section 3 of the Agreement, entitled "Use of Easements," states:

> Consistent with the uses set forth in Section 1 above, and subject at all times to the terms of the [e]xisting [Lease], Unison shall have the right to lease, license, transfer or assign in whole or in part, or permit the use of the Easements and/or its rights under this Agreement by any third parties including communication service provides or tower owners or operators, and any lessee or licensee under the [e]xisting [Lease] and the affiliates, agents, contractors, invitees and employees of Unison and/or Unison's present or future lessees or licensees (collectively, "Customers"). Unless and until the [e]xisting [Lease] ceases to be in full force and effect, Unison shall not construct, operate or maintain any wireless communications facilities for its own use, and Unison has no right to lease, license or permit the use of the Easements to any parties other than [CE], and accordingly, this Agreement shall under no circumstances be deemed to be for a similar purpose to the [e]xisting [Lease].

Shortly thereafter, CE filed suit for breach of the Lease, tortious interference with contract, and for an injunction invalidating the Agreement and removing it from the record. The trial court entered an agreed temporary injunction stating that Unison and the Norrells were to cease any action pursuant to the Agreement until further order and that CE would pay rent to the Norrells instead of Unison. In March 2015, the Norrells transferred their property to Jose A. Zuniga and Iracema D. Zuniga (the Zunigas), through a warranty deed that was subject to the Lease and the Agreement. After adding the Zunigas to the suit, CE settled with them, and the trial court dismissed them from the suit with prejudice.

On August 5, 2016, CE filed a motion for summary judgment on the basis that the Norrells violated the Lease by entering into the Agreement. CE claimed it was entitled to injunctive relief and entitled to prevail on its breach of contract and tortious interference claims. On August 8, 2016, Unison filed its motion for traditional and no evidence

summary judgment arguing that the parties had not violated the terms of the Lease, which the Norrells joined and adopted on September 1, 2016.

On September 25, 2016, Unison notified CE that it changed its name to T14 MelTel LLC (T14MelTel) and requested for CE to remit its rental payments to T14 MelTel.[2]  In response, CE filed an application for status conference claiming that Unison had violated the agreed temporary injunction by transferring its rights to T14 MelTel.  CE requested that the trial court (1) set the matter for a status conference and hearing prior to the return date for the pending motions for summary judgment, (2) order Unison to provide all documents relating to a purported transaction between Unison and Melody Wireless,[3] (3) order that T14 MelTel, Unison Site Management, and Unison Site Management, LLC be added as defendants, and (4) sanction Unison as it deemed appropriate for violation of the agreed temporary injunction.  In response, Unison claimed that it had changed its name to T14 MelTel and that it was already a party to this cause.  Unison stated that its "filing and identification information remains the same," its "assets and liabilities remain the same," and its "contractual rights and obligations remain the same."

On October 6, 2016, the trial court granted Unison's motion for traditional and no evidence summary judgment.  This appeal followed.

## II.    STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as

---

[2] At the summary judgment hearing, Unison clarified that the payments from CE for rent were paid to the Norrells pursuant to the temporary injunction.

[3] It appears that CE claims that a third-party Melody Wireless purchased Unison during the pendency of this cause in the trial court.   However, Unison claims that it merely changed its name and that no third party purchased Unison.

4

a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). When both sides move for summary judgment and one is granted and the other denied, we determine all questions presented and render the judgment the trial court should have rendered. *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 583 (Tex. 2002).

### III. CONSTRUING THE AGREEMENT

By its first issue, CE contends that the Norrells and Unison breached the Lease by entering into the Agreement because the Lease and the Agreement have a similar purpose. CE's breach of contract and tortious interference claims depend on whether the Agreement has a similar purpose to the Lease. Thus, we must address the traditional motion for summary judgment first.

### A. Applicable Law

When construing the terms of a contract, the appellate court must ascertain and give effect to the parties' intentions as expressed in the document. *J.M. Davidson, Inc.*

5

*v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Lopez v. Munoz, Hockema & Reed, LLP*., 22 S.W.3d 857, 861 (Tex. 2000).  The court will attempt to harmonize and give effect to all the provisions of the contract by examining the whole agreement.  *Webster*, 128 S.W.3d at 229.

We give the contract terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Dynegy Midstream Servs., LP. v. Apache Corp*., 294 S.W.3d 164, 168 (Tex. 2009).  A contract is unambiguous if, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning.  *Webster*, 128 S.W.3d at 229. We construe an unambiguous contract as a matter of law.[4]  *Id.*

**B.    Analysis**

CE contends that the Norrells have violated the Restrictive Covenant by leasing the property to Unison for a similar purpose.  CE sets out the purpose of the Lease as follows:

> The purpose [of the Lease] is not only to allow [CE] the right to use the Property for wireless communication purposes and to construct and maintain towers, antennas, buildings and other related facilities, but also (i) to preclude others from doing so on the Property and adjacent Premises, (ii) to allow for other, related actions by [CE], such as the installation of utilities, which support the Intended Use, (iii) to allow ingress, egress and access to public roads to service the Intended Use, and (vi) to allow subleasing of the Property for use of the tower and construction of other equipment by those subtenants.
>
> . . . .
>
> [T]he purpose of the Lease is to allow the exclusive use and enjoyment of the Property by [CE] (and its subtenants) for the transmission and receipt of wireless communication signals and the construction and maintenance of tower, antennas, or buildings and related facilities, and to

---

[4] Neither party argues that the Agreement is ambiguous.

preclude any others from undertaking any similar activities on the Parent Parcel.

CE states that the purpose of the Agreement is to provide Unison

> with easements for the use and enjoyment of the Property by [Unison] (and their subtenants) for the transmission and receipt of wireless communication signals and the construction and maintenance of towers, antennas, or buildings and related facilities, and to preclude any others (other than [CE] in strict accordance with the Lease) from undertaking any such activities on the Property or adjoining Premises, and to obtain the rents paid by [CE] under the Lease while providing the Norrells with one-half of the additional rental income obtained from new customers (subtenants).

CE complains that "at their heart, [both the Lease and the Agreement] are for 'wireless communication purposes.'"

As previously set out, the Restrictive Covenant of the Lease provided that *during the term of the Lease*, the Norrells would not "enter into any other lease, license or other agreement for a similar purpose as set forth herein, on or adjacent to the Property."[5] According to CE, the Restrictive Covenant granted CE an exclusive right to lease the property and to use the easements granted by the Norrells for wireless communication purposes. The Norrells and Unison do not disagree with this point. However, CE claims that pursuant to the Agreement, Unison and the Norrells can lease the property to other parties and/or Unison may use or allow others to use the easements "at any and all times."

The Lease states that Unison's "right to lease, license, transfer or assign in whole or in part or permit the use of the Easements and/or its rights under this Agreement by

---

[5] CE points out that the Restrictive Covenant states that the entire phrase "during the term of the Lease *together with any extensions thereof*" (emphasis added) was included in the Lease to ensure that CE would negotiate with the Norrells for an extension of the lease and would not be required to negotiate with Unison, its competitor, for an extension of the lease. However, at this time, there is no extension to the Lease, and CE has not explained why we are required to conclude that the Norrells and Unison violated the Restrictive Covenant based on an event that has not yet occurred. Nonetheless, assuming that there had been an extension of the Lease, our analysis would not be different because the Agreement does not take effect until the Lease ceases.

7

any third parties including communication service providers or tower owners or operators . . . is subject at all times to the terms of the Lease." Thus, this portion of the Agreement evinces the parties' intent to prohibit Unison from leasing, licensing, transferring, assigning, or permitting the use of the easements during the pendency of the Lease. The Agreement specifically sets out that it is subject to the terms of the Lease "at all times," and the Lease prohibits the parties from entering into any other lease, license or other agreement for a similar purpose during the term of the Lease. The Agreement also states that "[*u*]*nless and until the* [*e*]*xisting* [*Lease*] *ceases to be in full force and effect*, Unison *shall not* construct, operate or maintain any wireless communications facilities for its own use, and Unison has no right to lease, license or permit the use of the Easements to any parties other than [CE], and accordingly, this Agreement shall under no circumstances be deemed to be for a similar purpose to the [e]xisting [Lease]." (Emphasis added).

Ascertaining and giving effect to the parties' intentions as expressed in the document and harmonizing and giving effect to all the provisions of the Agreement by examining the whole document, we conclude that so long as the Lease is in full force and effect, Unison may only lease, license or permit the use of the easements to CE. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Lopez*, 22 S.W.3d at 861. Moreover, while the Lease is in full force and effect, Unison has no right to use, lease, license, or permit the use of the easements to any other parties or to construct, operate, or maintain wireless communications facilities for its own or anyone else's use. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Lopez*, 22 S.W.3d at 861.

8

The Agreement precludes Unison from using the easements, leasing the easements, or leasing the property for wireless communications purposes during the pendency of the Lease.[6]  In fact, Unison provided undisputed summary judgment evidence that it has not done so, and it does not intend to do so.[7]  As set out by CE, the purpose of the Lease is to allow CE and its subtenants exclusive use and enjoyment of the property  "for the transmission and receipt of wireless communication signals and the construction and maintenance of tower, antennas, or buildings and related facilities, and to preclude any others from undertaking any similar activities on the Parent Parcel."  As previously stated, the Agreement does not allow Unison to interfere with CE's rights under the Lease, and specifically requires Unison only to allow CE to use the premises and easements for wireless communications purposes.  Therefore, we decline to interpret the Agreement as having a similar purpose as the Lease especially when the Agreement specifically forbids Unison from (1) operating, using, maintaining, leasing, or licensing the property for wireless communications purposes to anyone other than CE and (2) using the easements for any reason during the pendency of the Lease.[8]  We conclude that the Lease and the Agreement do not have a similar purpose.[9]  Therefore, the trial court

---

[6] The Lease has a term of five years with five five-year extension.  The Agreement precludes Unison from doing anything that violates the Lease during the five-year term or during any of the extensions.

[7] CE does not claim that either Unison or the Norrells have used the easements at issue, leased the easements at issue, or leased the property at issue to any other party for any purpose.  And, the uncontradicted summary judgment evidence establishes that they have not done so.

[8] Without citation to any authority, CE claims that even if the Agreement does not allow Unison to use the premises during the duration of the Lease, the Agreement has a similar purpose.  Without further explanation from CE, we reject this argument.  *See* TEX. R. APP. P. 38.1(i).

[9] Stated another way, Unison may not invoke its right to lease the property to anyone other than CE, use the property and easements itself for any purpose, or construct, operate, or maintain wireless communications facilities for its own use until the Lease is no longer in full force and effect.

properly granted summary judgment in favor of the Norrells and Unison on that basis.[10]

We overrule CE's first, third, fourth, and sixth issues as these issues are based on CE's argument that the Agreement and Lease have a similar purpose.[11]

## IV.    Nonuse of the Easements

By its second issue, CE contends that the trial court's summary judgment is improper because Unison has voluntarily ceased using the easements. Specifically, CE argues that Unison breached a provision of the Agreement requiring that Unison use the easements from June 6, 2014 to June 5, 2019. CE cites no authority, and we find none, supporting this bare assertion. Therefore, we are unable to reverse the trial court's summary judgment on this basis. We overrule CE's second issue.

## V.    Necessary Parties

By its fifth issue, CE contends that the trial court should have ordered the inclusion of Unison Site Management, LLC and T14 MelTel as defendants and should have compelled production of certain documents requested by CE.[12] Unison and the Norrells respond that CE failed to get a ruling from the trial court on their aforementioned requests, which CE made in its application for status conference.

---

[10] Without citation to pertinent authority or explanation, CE assumes that we must construe the Agreement by examining other documents. However, when construing a contract, our main purpose is to ascertain the parties' intent as expressed in the instrument, and "[o]rdinarily, the writing alone is sufficient to express the parties' intentions because it is objective, not subjective, intent that controls." *Avasthi & Assocs., Inc. v. Banik*, 343 S.W.3d 260, 264 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

[11] By its eighth issue, as we understand it, CE contends that because the Norrells are not absolved of responsibility to CE, the trial court erred in making such a conclusion. As we understand it, we are required to address CE's eighth issue only if CE prevailed on its first issue. However, we have affirmed the summary judgment on the basis that the Lease and Agreement do not have a similar purpose. Accordingly, because CE has not prevailed on its first issue, we need not address CE's eighth issue. *See* Tex. R. App. P. 47.1.

[12] CE cites no authority supporting its argument that the trial court should have joined the parties or required production of documents. *See* Tex. R. App. P. 38.1(i).

Relevant to our analysis, to preserve error for appeal, a party must show that after making its complaint, the trial court either (1) "ruled on the request, objection, or motion, either expressly or implicitly" or (2) "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." *See* TEX. R. APP. P. 33.1. Here, although CE filed an application for status conference requesting for the trial court to add Unison Site Management, LLC and T14 MelTel to the suit and for production of certain documents, CE failed to obtain a ruling from the trial court.

At the hearing on the application for status conference and on the competing motions for summary judgment, CE argued that the trial court was required to add the above-listed parties. At the end of the hearing, the trial court denied CE's motion for summary judgment. Unison asked the trial court to clarify that it meant it was granting Unison's motion for summary judgment, and the trial court stated that it was. The Norrells also asked the trial court to clarify if it was dismissing them from the cause, and the trial court stated it was. However, CE did not ask the trial court for a ruling on its request to add the parties listed above or to rule on its request for production. Thus, the trial court did not explicitly rule on CE's requests. Moreover, we conclude that by granting summary judgment in favor of Unison and the Norrells, the trial court did not implicitly deny CE's requests. *See Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 662 (Tex. App.—Waco 2002, no pet.) (explaining that a ruling on a motion for summary judgment does not constitute an implicit ruling on the non-prevailing party's objections to summary judgment evidence). Therefore, we conclude that CE failed to preserve error. We overrule CE's fifth issue.[13]

---

[13] We note that during the hearing, CE specified that the trial court must add these parties because if CE prevailed on its motion for summary judgment the "order is not going to give full and final adjudication to the matter because the order that we're asking for is a permanent injunction against interference with" CE and the Lease. However, CE did not prevail in the trial court regarding its motion for summary judgment,

11

## VI.    THE ZUNIGAS

By its seventh issue, CE contends that the Zunigas are not necessary parties.  CE acknowledges that it only raises this issue to avoid any claim of waiver.  However, the trial court dismissed the Zunigas from the suit with prejudice and that decision has not been appealed by Unison or the Norrells.  Accordingly, it is not properly before us, and we overrule it.

## VII.    CONCLUSION

We affirm the trial court's judgment.

/s/ **Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
18th day of October, 2018.

---

and it has not prevailed on appeal.  Accordingly, we conclude that this issue is moot.