Affirmed and Memorandum Opinion
filed March 3, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00018-CV



Donald E.
Spencer, Appellant 

v.

Don McGill of
Katy, Ltd., Appellee 



On Appeal from
the County Civil Court at Law No. 2

Harris County, Texas

Trial Court
Cause No. 877,919



 

MEMORANDUM OPINION 

            In
this appeal from a bench trial, appellant Donald E. Spencer, pro se,
raises twelve issues challenging the trial court’s adverse judgment on his
claims under the Deceptive Trade Practices and Consumer Protection Act
(“DTPA”).  In his first issue, Spencer contends that the trial court erred in
not granting leave to amend his petition.  In issues two through eleven, he
challenges the sufficiency of the evidence supporting the trial court’s
findings of fact.  Finally, in his twelfth issue, Spencer contends the trial
court erred in awarding appellee Don McGill of Katy, Ltd. (“McGill”), its costs
of court.  For the reasons explained below, we affirm.

I

            On
August 1, 2006, Spencer brought his 1999 Toyota RAV4 to McGill around 7:00
a.m.  At that time, the vehicle had been driven over 140,000 miles.  Because
his vehicle-inspection sticker had expired, Spencer requested a vehicle
inspection as well as a 30,000-mile service.  Spencer spoke with Sonny Spencer,[1] a service
advisor with McGill, and signed a service ticket authorizing these two services
on the vehicle.  In addition to these services, Spencer authorized McGill to
perform a brake job on the vehicle if needed because the brakes were “a little
soft.”  According to Spencer, the brake job was authorized if needed for the
vehicle to pass inspection.

            Around
11:00 a.m., Sonny called Spencer and informed him that the vehicle needed a
power-steering flush and fuel-injector cleaning, and he wanted to know if
Spencer would authorize this additional work.  According to Spencer, he asked
Sonny if everything else was “okay” and Sonny answered, “Yes, everything is
okay.”  Whether the vehicle had passed or failed the inspection was not
specifically discussed.  The total labor charges for the additional work
authorized by phone were $177.64.

            At
about 3:15 p.m., according to Spencer, Sonny called Spencer to inform him that
his vehicle failed the inspection and it needed tires.[2]  At that
point, Spencer became very upset and angry that additional work had been done
to the vehicle before the inspection was performed.  At about 5:00 p.m.,
Spencer called Sonny’s supervisor and the service manager for McGill, Allen
Simmer.  Although Spencer disputed it, Simmer testified that he offered to put
two new tires on Spencer’s vehicle free of charge so that McGill could submit his
vehicle for inspection.  Spencer said he would call Simmer back with his
answer.  

            Instead
of calling Simmer back, Spencer picked up his vehicle and paid the invoice for
McGill’s services.  Spencer signed the accounting copy of his service ticket on
August 1, 2006, with this notation: “This payment is in protest of the service
I received.  DS.”  In response to Spencer’s complaint, the cashier offered a
free oil change certificate, which Spencer accepted. 

            The
next day, August 2, Mike Mynatt, McGill’s general manager, spoke with Spencer
and offered to replace his two rear tires free of charge, or to refund all of
the labor charges for the work Spencer claimed that he would not have
authorized had he known his vehicle would not pass inspection.  The labor for
these services, the brake job, power-steering flush, and fuel-injector
cleaning, totaled $376.35.[3] 
In response, Spencer told Mynatt that if McGill did not refund the majority of
his bill, Spencer had a sister-in-law who was an attorney who would assist him
in suing McGill.  Spencer did not complain about McGill’s failure to replace
his windshield-wiper blades, which was part of the 30,000-mile service, during
this conversation.

            That
same day, Spencer took his vehicle to Memorial Car Care Center for an
inspection.  Spencer’s car failed this inspection due to, among other things,
the condition of the rear tires and the windshield wipers.   

            By
letter dated August 21, 2006, Spencer demanded that McGill pay him $1,542.90
for claimed violations of the DTPA.  In this letter, Spencer stated that he had
a sister-in-law, who was an attorney, who said that there was “more money
available.”  McGill did not respond to the demand letter.

            Spencer
then sued McGill, claiming that McGill violated the DTPA in several respects. 
Specifically, Spencer claimed that McGill violated Section 17.46(b)(24) of the
DTPA by failing to disclose that his vehicle had failed the safety inspection
when it induced Spencer to agree to additional work on the vehicle and by
failing to perform a safety inspection as Spencer requested.  Spencer also
claimed that McGill violated Section 17.46(b)(22) of the DTPA by failing to
replace his windshield wipers and by representing that McGill had performed the
requested safety inspection when it had not done so.  Spencer alleged that each
of these actions also constituted unconscionable actions.

            In
July 2009, the case was tried to the court, which rendered judgment in favor of
McGill.  At Spencer’s request, the trial court entered findings of fact and
conclusions of law.  The court’s findings of fact were as follows:

            1.         Plaintiff Donald E. Spencer
(“Spencer”) purchased automobile maintenance and repair services on August 1,
2006[,] from Defendant Don McGill of Katy, Ltd. (“Don McGill Toyota”).

            2.         Don McGill Toyota did not fail to
disclose information that was known at the time of the transaction with the
intent to induce Spencer into a transaction into which Spencer would not have
entered had the information been disclosed. 

            3.         Don McGill Toyota did not falsely
represent that it had performed services or replaced parts on Spencer’s car.

            4.         Spencer did not rely upon any
representation by Don McGill Toyota to his detriment.  

            5.         No representation made by Don McGill
Toyota was a producing cause of economic damages to Spencer.

            6.         Don McGill Toyota did not take
advantage of Spencer’s lack of knowledge, ability, experience, or capacity to a
grossly unfair degree.

            7.         Don McGill Toyota tendered and
Spencer accepted a free oil change certificate in full satisfaction of the
dispute over the service Spencer purchased from Don McGill Toyota on August 16,
2006.

            8.         Spencer did not incur any economic
damages.

            9.         Spencer did not suffer any mental
anguish.

            10.       Spencer could have avoided, by the
exercise of reasonable care, $376.35 in claimed damages.

            11.       Spencer did not incur any attorney’s
fees in this case.

            On
October 21, 2009, the trial court signed an “Amended/Modified Final Take
Nothing Judgment” against Spencer, which awarded McGill its costs of court, but
gave Spencer a judgment credit for $20.00.

II

            In
his first issue, Spencer contends the trial court erred by not granting leave
to amend his petition.  Specifically, he contends that McGill’s stipulation at
trial that no certified safety inspector ever looked at Spencer’s vehicle
constituted additional violations of the DTPA that he should have been granted
leave to assert.  McGill points out, however, that Spencer did not seek leave
to amend his pleadings until he filed his second motion for new trial on
November 20, 2009, a month after the trial court signed the Amended/Modified
Final Take Nothing Judgment on October 21, 2009.  After the trial court renders
judgment, it is too late to ask to amend the pleadings to add new parties or
claims.  Mitchell v. LaFlamme, 60 S.W.3d 123, 132 (Tex. App.—Houston
[14th Dist.] 2000,  no pet.).  Therefore, the trial court did not err by
refusing to grant Spencer leave to amend his petition.  We overrule Spencer’s
first issue.

III

            In
his second through eleventh issues, Spencer challenges the sufficiency of the
evidence supporting the trial court’s findings of fact 2, 3, 4, 5, 6, 7, 8, 10,
and 11.  Although Spencer asserts in the headings for each of these issues that
he is challenging the factual sufficiency of the evidence, in his brief he also
discusses the standard of review for legal sufficiency of the evidence, and
“incorporates this standard of review on all issues in this brief.”  Therefore,
we will review the legal and factual sufficiency of the evidence supporting the
trial court’s findings of fact as necessary.

A

            Findings
of fact in a bench trial have the same force and dignity as a jury’s verdict
upon questions and are reviewed for legal and factual sufficiency of the
evidence by the same standards.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996).  We review the trial court’s legal conclusions de novo.  BMC
Software Belguim, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  

            When
reviewing legal sufficiency we review the evidence in the light most favorable
to the challenged finding and indulge every reasonable inference that would
support it.  See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005).  We credit favorable evidence if a reasonable fact finder could, and
disregard contrary evidence unless a reasonable fact finder could not.  Id.
at 827.  The evidence is legally sufficient if it would enable a reasonable and
fair-minded person to reach the verdict under review.  Id.  A party
attacking the legal sufficiency of an adverse finding on an issue on which he has
the burden of proof must demonstrate that the evidence conclusively establishes
all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  The fact finder is the sole judge of witness
credibility and the weight to give testimony.  See City of Keller, 168
S.W.3d at 819.

            When
reviewing a challenge to the factual sufficiency of the evidence, we examine
the entire record, considering both the evidence in favor of, and contrary to,
the challenged finding.  See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).  When, as here, a party attacks factual sufficiency with respect to an
adverse finding on which he had the burden of proof, he must demonstrate on
appeal that the finding is against the great weight and preponderance of the
evidence.  Francis, 46 S.W.3d at 242.  After considering and weighing
all the evidence, we set aside the fact finding only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  In our review, we may
not substitute our own judgment for that of the trier of fact or pass upon the
credibility of the witnesses.  See Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998); GTE Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d
599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616.

            A
consumer may recover damages incurred as a result of another’s false,
misleading, or deceptive acts or practices that are a producing cause of
economic damages or damages for mental anguish.  See Tex. Bus. & Com
Code § 17.50(a)(1).  False, misleading, or deceptive acts or practices include
failing to disclose information concerning goods or services that was known at
the time of the transaction if the failure to disclose such information was
intended to induce the consumer into a transaction and the consumer would not
have entered into the transaction had the information been disclosed.  Id.
§ 17.46(b)(24).  False, misleading, or deceptive acts or practices also include
representing that work or services have been performed on, or parts replaced
in, goods when the work or services were not performed or the parts replaced.  Id.
§ 17.46(b)(22).  

            A
consumer also may recover actual damages for any unconscionable action or
course of action that is a producing cause of economic damages or damages for
mental anguish.  Tex. Bus. & Com. Code § 17.50(a)(3); see also Mays v.
Pierce, 203 S.W.3d 564, 571–72 (Tex. App.—Houston [14th Dist.] 2006, pet.
denied) (explaining that claims of unconscionable action or course of action
and claims of false, misleading, or deceptive acts or practices are distinct
and either basis will support recovery).  An “unconscionable action or course
of action” means “an act or practice which, to a consumer’s detriment, takes
advantage of the lack of knowledge, ability, experience, or capacity of the
consumer to a grossly unfair degree.”  Id. § 17.45(5).  To prove an
unconscionable action, a consumer must show that the defendant’s acts took
advantage of his lack of knowledge and that the resulting unfairness was glaringly
noticeable, flagrant, complete and unmitigated.  Bradford v. Vento, 48
S.W.3d 749, 760 (Tex. 2001).  The relevant inquiry examines the entire
transaction but not the defendant’s intent.  Chastain v. Koonce, 700
S.W.2d 579, 583 (Tex. 1985).

B

1

            In
his second issue, Spencer contends the evidence is insufficient to support
finding of fact 1, that he “purchased automobile maintenance and repair
services on August 1, 2006” from McGill.  Spencer complains that it is
uncontroverted that he requested the safety inspection first, and he was
deceived into authorizing additional work when McGill did not inform him of the
status of the inspection when it called to request the additional work.  He asserts
that finding of fact 1 “is the beginning of the deception and damages” to him. 
But the finding on its face is not erroneous, because the evidence shows that Spencer
did purchase maintenance and repair services for which he signed a service
ticket and paid “under protest” for those services.  The finding does not state
or imply anything about the order in which Spencer requested services or which
specific services Spencer requested.  We therefore overrule Spencer’s first
issue.

2

            In
his third issue, Spencer contends the evidence is insufficient to support
finding of fact 2, that McGill “did not fail to disclose information that was
known at the time of the transaction with the intent to induce Spencer into a
transaction into which Spencer would not have entered had the information been
disclosed.”  Spencer contends that the evidence is uncontroverted that McGill
“failed to do the work requested . . . in the order that comports with honesty
and efficiency.”  Specifically, he points to his testimony that he instructed
McGill to do the safety inspection first and he authorized a brake job if
necessary to pass the inspection, which he considered to be “job one.”  He also
contends he would not have agreed to the additional work if he had known the
car had not passed inspection, and he points to Department of Public Safety rules
and regulations governing the state-mandated inspections to assert that McGill
acted improperly concerning the inspection.

            Spencer
acknowledged that he authorized the most expensive service, the 30,000-mile
maintenance, as well as the inspection, when he signed the service ticket.  By
signing the service ticket, Spencer agreed to the following statement:  “I
hereby authorize the repair work herein after set forth to be done along with
the necessary material.”  Spencer also testified that he authorized McGill to
perform a brake job on his vehicle, if needed, because he thought the brakes
were “a little soft.”  Further, when Sonny called Spencer at 11:15 a.m. and
asked whether he would authorize the additional services of the power-steering
flush and fuel-injector cleaning, Spencer authorized these services, too. 
Spencer contends he was misled that the inspection had been performed when he
asked whether everything else was “okay” and Sonny told him it was, but he
admitted there was no specific discussion concerning the inspection and he
merely assumed that it had been successfully completed.  This evidence is
legally sufficient to support the trial court’s finding of fact.

            Although
Spencer contends he told Sonny to perform the inspection first, the trial court
was not required to accept his version of the events.  See City of Keller,
168 S.W.3d at 819; Pascouet, 61 S.W.3d at 615–16.  We note that McGill
sought to impeach Spencer’s credibility based on his failure to disclose
several lawsuits he had filed in Harris County and in federal court in Kansas. 
During his deposition, Spencer was asked how many lawsuits he had been a party
to before his lawsuit against McGill.  In response, Spencer disclosed three
prior lawsuits that he had filed against various companies.  Although Spencer
identified three lawsuits, he could remember almost nothing about the facts of
those lawsuits, including one he was apparently appealing pro se at the
time of his deposition.  In addition, Spencer failed to disclose at least two
other lawsuits, one filed against the City of Houston and the other against
American Mining Company.  Spencer also admitted that, contrary to his assertion
in his DTPA demand letter, he did not have a sister-in-law who was an attorney.

            There
is also evidence that no inspection was done because McGill determined that the
vehicle needed new tires to pass inspection.  Simmer and Mynatt testified that
they offered to replace Spencer’s tires at no charge so the inspection could be
performed, but Spencer refused this offer.  Spencer also admitted he was not
charged for an inspection.  Further, a DPS employee who was called by Spencer,
Jean Chapa, testified that she investigated McGill when Spencer filed a
complaint with the agency, and she determined that McGill did nothing wrong and
so did not issue a citation to McGill for its actions.[4]  Chapa also
testified that a dealership does nothing wrong if it does not charge for an
inspection.  Thus, the evidence on this issue is conflicting.  We defer to the
fact finder’s resolution of disputed issues.  CA Partners v. Spears, 274
S.W.3d 51, 75 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Therefore, we
cannot say that the trial court’s finding of fact 2 is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  

            We
overrule Spencer’s third issue.

3

            In
his fourth issue, Spencer contends the evidence is insufficient to support
finding of fact 3, that McGill did not falsely represent that it had performed
service or replaced parts on his vehicle.  The thrust of this issue is that
McGill invoiced Spencer for replacing windshield wipers, but did not replace
them; consequently, when Spencer took the vehicle to another inspection station
he had to buy wipers again to pass the inspection.  Spencer points to his complaint
in his DTPA demand letter that the wipers were not replaced, the trial court’s
$20 judgment credit to cover the wiper expense, and Simmer’s admission that
Spencer suffered money damages for wiper inserts he was charged for but did not
receive.[5]

            Although
McGill does not dispute that the wipers or wiper inserts were not replaced,
Spencer points to no evidence that that McGill made any false, misleading, or
deceptive representations concerning wipers which would support a DTPA claim.  Instead,
the evidence shows that Spencer was not aware of any issue concerning the
wipers until after he took the vehicle to another inspection station.  Mynatt
testified that Spencer never said anything in their phone conversation about
wipers, and if Spencer had informed him of the problem they would have replaced
the wipers or refunded his money.  Spencer presented no evidence to the
contrary. 

            Further,
Spencer does not challenge the trial court’s conclusion of law that his claim
that McGill failed to replace his windshield wiper-blade inserts sounds only in
contract, but this conclusion is supported by the evidence and the law.  Mere
breach of contract, without more, does not violate the DTPA.  Riddick v.
Quail Harbor Condo. Ass’n, 7 S.W.3d 663, 670 (Tex. App.—Houston [14th
Dist.] 1999, no pet.).  When a representation by a defendant causes no harm
itself but instead the injury or damage was caused by the breach of contract,
that injury is governed by contract law, not the DTPA.  See Crawford v. Ace
Sign, Inc., 917 S.W.2d 12, 14–15 (Tex. 1996).  Therefore, we conclude that
sufficient evidence supports the trial court’s finding of fact 3.

            We
overrule Spencer’s fourth issue.

4

            In
his fifth issue, Spencer contends the evidence is insufficient to support
finding of fact 4, that Spencer did not rely on any representation by McGill to
his detriment.  In this issue, Spencer asserts that the testimony is
uncontroverted that he relied on McGill to work on his vehicle according to his
instructions and he suffered damages.  We have already discussed the evidence
surrounding Spencer’s assertion that the inspection was the primary job and
McGill did not inform him it was not done when he approved the additional
services.  And there is no assertion that the work performed was unnecessary or
incorrectly performed.  The evidence is legally and factually sufficient to
support the trial court’s finding of fact 4.

            We
overrule Spencer’s fifth issue.

5

            In
his sixth issue, Spencer contends the evidence is insufficient to support the
trial court’s finding of fact 5, that no representation made by McGill was a
producing cause of economic damages to Spencer.  Spencer points to the evidence
that his vehicle failed a subsequent inspection for wiper blades, McGill
represented that new wipers were installed as part of the 30,000-mile service,
and the service was done at the wrong time because it wasn’t due for another
4,000 miles.  The evidence shows, however, that Spencer authorized the
30,000-mile service when he dropped off the car, before any inspection was
performed, and Spencer presented no evidence McGill made a representation actionable
under the DTPA regarding the wipers.  See Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 480–81 (Tex. 1995) (explaining that alleged
misrepresentation that did not influence the plaintiff’s behavior was not the
producing cause of plaintiff’s damages).

            We
overrule Spencer’s sixth issue.

6

            In
his seventh issue, Spencer contends the evidence is insufficient to support
finding of fact 6, in which the trial court found that McGill did not take
advantage of Spencer’s lack of knowledge, ability, experience, or capacity to a
grossly unfair degree. In this issue, Spencer points to his testimony that his
safety-inspection sticker was expired and the inspection should have been
performed first.  He also points to excerpts of a DPS manual to assert that McGill
violated the manual’s rules, and argues that “no reasonable person would not do
a fail/pass safety inspection first.”  But, as we have already discussed, the
evidence concerning Spencer’s expectations was disputed, and a DPS investigator
found that McGill did nothing wrong when it did not perform an inspection and
did not charge Spencer for an inspection.  This evidence is sufficient to
support the trial court’s finding.

7

            In
his eighth issue, Spencer contends the evidence is insufficient to support
finding of fact 7, that McGill tendered and Spencer accepted a free oil-change
certificate in full satisfaction of the dispute over the service Spencer
purchased from McGill on August 1, 2006.  Spencer asserts that he did
not accept the free oil change in satisfaction of his complaints, and points to
his phone call to Mynatt on August 2 to continue his complaining and his DTPA
demand letter as support.  We agree with Spencer.  

            McGill
points to Spencer’s testimony that when he picked up his vehicle on August 1,
he complained to the cashier about the services he received and in response she
offered him a free oil-change certificate, which he accepted.  The accord and
satisfaction defense rests upon a contract, express or implied, in which the
parties agree to the discharge of an existing obligation by means of a lesser
payment tendered and accepted.  Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 863 (Tex. 2000).  For this defense to prevail, however, there
must be a dispute and an unmistakable communication to the creditor that tender
of the reduced sum is upon the condition that acceptance will satisfy the
underlying obligation.  Id.  “The parties must specifically and
intentionally agree to the discharge of one of the parties’ existing
obligations.”  Id.  

            There
is no evidence that Spencer and McGill “specifically and intentionally” agreed
that a free oil-change certificate would satisfy Spencer’s complaints.  In
fact, it is undisputed that the disagreement continued after Spencer received
the certificate.  Therefore, the evidence is insufficient to support this
finding of fact.  But the defense of accord and satisfaction is merely an
alternative basis for a judgment in favor of McGill.  We have already concluded
that the evidence supports the trial court’s findings of fact that McGill did
not engage in false, misleading or deceptive acts or unconscionable actions,
Spencer did not rely on any representations to his detriment, and no
representations were a producing cause of damages to Spencer.  Therefore, this
finding of fact did not cause the rendition of an improper judgment and
therefore does not require the judgment’s reversal.  Tex. R. App. P. 44.1(a).

            We
overrule Spencer’s eighth issue.

8

            In
his ninth issue, Spencer contends that the evidence is insufficient to support
the trial court’s finding of fact 8, that Spencer did not incur any economic
damages.  As noted above, we have already concluded that the evidence supports
the trial court’s findings of fact that McGill did not engage in any false,
misleading or deceptive acts or unconscionable actions, Spencer did not rely on
any representations to his detriment, and no representations were a producing
cause of damages to Spencer.  Having concluded the evidence supports the trial
court’s determination that no DTPA violations occurred, we do not need to reach
the issue of damages.




9

            In
his tenth issue, Spencer contends the evidence is insufficient to support
finding of fact 10, in which the court found that Spencer could have avoided,
by the exercise of reasonable care, $376.35 in claimed damages.  Spencer points
to his testimony that he asked for all labor charges to be returned to him on
August 1, 2006, McGill did not respond to his DTPA-demand letter, and $376.35
was not brought up until discovery in the lawsuit.  

            A
claimant under the DTPA owes a duty to mitigate his damages.  Gunn Infiniti,
Inc. v. O’Byrne, 996 S.W.2d 854, 858 (Tex. 1999).  Contrary to Spencer’s
assertion that he had not heard the $376.35 offer until discovery, both Simmer
and Mynatt testified that McGill offered Spencer this amount in response to his
complaints regarding the work performed on his vehicle.  This evidence is
legally sufficient to support the trial court’s finding.  Further, although
Spencer disputes this evidence, we cannot say that the trial court’s finding of
fact 10 on this disputed issue is so against the great weight and preponderance
of the evidence as to be manifestly unjust.  

            We
overrule Spencer’s tenth issue.

10

            In
his eleventh issue, Spencer contends the evidence is insufficient to support
finding of fact 11, that Spencer did not incur any attorney’s fees in this
case.  Spencer contends that the DTPA mandates reasonable and necessary
attorney’s fees for a plaintiff who prevails.  But we have determined that the
evidence is sufficient to support the trial court’s findings in favor of
McGill; therefore, Spencer is not a prevailing party.  And, to the extent
Spencer is contending that the trial court abused its discretion by excluding
Spencer’s evidence of attorney’s fees, the record reflects that Spencer failed
to disclose any information regarding his claimed fees in discovery.  Spencer
designated his attorney at trial to testify regarding reasonable and necessary
attorney’s fees, but he failed to disclose the information required by Texas Rule
of Civil Procedure 194.2(f), specifically, his attorney’s opinions and the basis
for them and her resume.  McGill moved to strike the attorney’s fees claim on
this basis, and Spencer’s attorney admitted that Spencer did not respond to any
discovery requests regarding Spencer’s claim for attorney’s fees.  Because
Spencer failed to make, amend, or supplement his response to include all the
required information regarding his attorney’s testimony, the trial court did
not abuse its discretion by excluding the attorney’s testimony under Rule
193.6(a).  See Tex. R. Civ. P. 193.6(a); Moore v. Mem’l Hermann Hosp.
Sys., Inc., 140 S.W.3d 870, 875 (Tex. App.—Houston [1st Dist.] 2004, no
pet.).  

IV

            In
his twelfth issue, Spencer contends the trial court erred by awarding McGill
its costs.  Specifically, Spencer complains of the award to McGill of $764.54
in costs for McGill to depose Spencer.  Under Texas Rule of Civil Procedure 131,
“the successful party to a suit shall recover of his adversary all costs
incurred therein, except where otherwise provided.”  Tex. R. Civ. P. 131.  We
review the award of costs to the prevailing party under an abuse-of-discretion
standard.  See Furr’s Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 376
(Tex. 2001).  Here, McGill was the prevailing party, and therefore the trial
court did not abuse its discretion in awarding McGill its costs.

            We
overrule Spencer’s twelfth issue.

*
* *

            We
overrule Spencer’s issues and affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

Panel consists of Justices Brown, Boyce,
and Jamison.









[1]
To avoid confusion, we will refer to Sonny Spencer, no relation to Donald
Spencer, as “Sonny.”





[2]
Whether Sonny told Spencer that the vehicle would not pass an inspection
without new tires, or that the vehicle was actually inspected and failed the inspection,
was disputed at trial.  Sonny did not testify because, according to McGill’s
counsel, he had suffered a stroke and subsequent brain aneurysm shortly after
the incident and had no memory of it.  There was no evidence that McGill had
actually performed an inspection which the vehicle failed, and McGill
stipulated at trial that no inspection was performed.





[3]
McGill also introduced into evidence the accounting copy of the invoice for
services Spencer received on August 1, 2006.  Spencer testified that he had
never seen this document until after he filed the lawsuit.  Simmer testified
that he wrote on the document the total for the labor charges for the three
services that Spencer claimed he would not have authorized had he known his
tires were too worn to pass inspection.  The total Simmer wrote down was
$376.35, the same amount that Mynatt testified he offered Spencer on August 2,
2006.





[4]
Spencer also lodged one or more complaints about Chapa to her superior at DPS
following her investigation. 





[5]
Simmer also testified that he believed there was a “miscommunication” because
Toyota wiper inserts will not fit in after-market wiper blades, and Spencer
should have been informed of this fact, but he was not.